[Civ. No. 2670.   Fourth Dist.   Mar. 24, 1942.]

SAFEWAY STORES, INCORPORATED (a Corporation), Appellant, v. SAN JOAQUIN COTTON OIL COMPANY (a Corporation), Respondent.

Calvin H. Conron, Jr., for Appellant.

Borton, Petrini, Conron & Borton for Respondent.

SCHOTTKY, J. pro tem.—Appellant sought to recover the sum of $2,002.67 from respondent in a complaint which set forth three causes of action. The first cause of action alleged in substance that respondent, on December 21, 1938, had 47 bales of cotton of the value of $2,002.67 in its possession and control, said cotton being the property of the San Joaquin Agricultural Company, which will be hereinafter referred to as the Agricultural Company; that on December 21, 1938, plaintiff filed an action against L. A. Sustarich and the Agricultural Company to recover $2,026.12, and that in said action a writ of attachment was levied which on said date was served on respondent; that on June 21st, 1939, after judgment in said action was rendered in favor of appellant, execution was issued, levied and served upon respondent; and that in response to said levy respondent failed to deliver said property or the value thereof to the sheriff.

The second cause of action alleged in substance that on March 16, 1939, respondent had in its possession and under its control the sum of $2,002.67 owed by it to said Agricultural Company; and that on said date appellant caused a writ of attachment to be served upon respondent. The re-

mainder of the allegations of the second cause of action were the same as those of the first.

The third cause of action alleged an assignment by the Agricultural Company to appellant of the proceeds of 47 bales of cotton to the extent of $2,026.12, and the service of said assignment by appellant on respondent on December 21, 1938, and that respondent, on January 26, 1939, and February 15, 1939, received the proceeds of said 47 bales but did not pay said proceeds to appellant.

The answer of respondent put in issue all of the allegations of the complaint except the incorporation of the parties and admitted that respondent had not paid appellant. The answer also set up by way of special defense the execution of the notes, a deed of trust and a chattel and crop mortgage executed by L. A. Sustarich, the predecessor in interest of the Agricultural Company, in favor of respondent, and alleged that the proceeds of said cotton were received and applied in partial discharge of said obligations, and that there was nothing owing to the Agricultural Company at the time of the alleged garnishment. Further special defenses were set up alleging that the levying or attaching officer did not pay or tender to respondent the amount of the mortgage debt at the time of the alleged garnishment, and that L. A. Sustarich, as general manager of the Agricultural Company, was acting for and was the agent of the Agricultural Company in all transactions concerning the crop.

The trial court found that appellant recovered judgment against the Agricultural Company and L. A. Sustarich in the sum of $2,061.77; that respondent did not have on December 21, 1938, or March 16, 1939, or June 15, 1939, any money or property which respondent owed to or which belonged to the Agricultural Company or L. A. Sustarich; that the proceeds of the loan from the Commodity Credit Corporation were applied in partial payment of the obligation due to respondent and secured by the chattel and crop mortgage and deed of trust; that none of the proceeds were paid to appellant; that the garnishing officers did not pay nor offer to pay the mortgage indebtedness; that throughout the entire transaction L. A. Sustarich was acting for and on behalf of the Agricultural Company. Judgment in favor of respondent followed and appellant appealed therefrom.

It appears from the record that early in 1938, one J. C. Sharp commenced growing a crop of cotton on property

known as the McCrary ranch in Tulare County. There was a first deed of trust for $60,230 against the property and respondent held a second deed of trust securing an obligation of $20,000 from said Sharp together with a crop mortgage upon the cotton crop to secure a note of $14,124 plus the obligation secured by the second deed of trust. Respondent was financing the growing of cotton upon the property. In June, 1938, Sharp sold the property to L. A. Sustarich and on June 29, 1938, Sustarich executed a new note and deed of trust to the McCrarys and also a new note to respondent payable on demand in the sum of $25,000, secured by a second deed of trust which covered not only the real property but the "rents, issues and profits therefrom," and which contained all of the usual provisions of such deeds of trust. In addition to the $25,000 note and deed of trust, said Sustarich executed a crop and chattel mortgage in favor of respondent to secure, among other things, his note in the sum of $6,990, which mortgage, by its terms, and by its incorporation, by reference, of the terms of a fictitious mortgage on record in said county, made said crop and chattels, and all payments, bounties, bonuses and benefits that might be received from the state or federal government, security for the payment of the deed of trust note and any other sums that Sustarich owed or might thereafter owe to respondent.

Sustarich testified that shortly after he purchased the property he and one T. H. Mitchell entered into an agreement to jointly farm the property, and in addition to the crop of cotton to put in a crop of peas, and that Mitchell agreed to furnish the money to finance the operation. On August 8, 1938, Sustarich conveyed a one-half interest in the property to Mitchell by deed which specified that it was subject to the deed of trust and crop mortgage. By another deed, also dated August 8, 1938, Mitchell and Sustarich conveyed the property to the San Joaquin Agricultural Company, a corporation which they had formed, they being the only two stockholders, each owning one-half of the stock. There were three directors, Mitchell, his wife A. R. Mitchell, and Sustarich. Sustarich was made general manager and continued in sole and active management of the farming operations upon the property. On August 19, 1938, respondent was advised by letter that the Agricultural Company was the owner of the land and that the interest of Sustarich had been transferred to the Agricultural Company. Throughout the fall of 1938 and

the early part of 1939, Sustarich was in sole and active supervision of the growing of the cotton and pea crops, and from time to time obtained advances from respondent to cover and defray the expenses of growing the crops, which advances, he testified, were used for the purposes of the Agricultural Company in growing said crops. The cotton, as it was harvested, was delivered to gins of respondent, and there ginned, and Sustarich, as general manager of the Agricultural Company, sold the cotton from time to time, and the proceeds were applied by respondent on the mortgage debt. By December 12, 1938, all of the cotton crop had been sold except 47 bales, for which negotiable bale or yard receipts had been issued. Sustarich testified that he and Mitchell, the only other stockholder in the Agricultural Company, agreed that because more money could be obtained by placing the last 47 bales in a government loan than by selling same on the open market, this remaining cotton should be put in a government loan. In order to secure the signature of respondent to said loan application, Sustarich, as general manager of the Agricultural Company, agreed that the proceeds of the loan would be delivered to respondent and applied on the secured obligations owing to respondent. On December 16, 1938, the application for said loan on 44 bales was made and the bale and yard receipts endorsed and delivered to the Commodity Credit Corporation, the government agency making the loan.

On December 21, 1938, appellant brought an action against Sustarich and the Agricultural Company and on June 15, 1939, obtained judgment against them in the sum of $22,-061.27. A writ of attachment was issued and served on December 21, 1938, but no offer was made then or at any subsequent time, to pay the mortgage obligation due respondent. On December 21, 1938, Sustarich, as general manager of the Agricultural Company, signed a letter addressed to respondent, authorizing respondent to pay to appellant the sum of $2,026.12 out of the proceeds of 47 bales of cotton, and respondent acknowledged receipt of said letter but did not agree to comply with said order. At that time there was still due to respondent on the two notes hereinbefore mentioned, the sum of $26,876.99. On January 26, 1939, the proceeds of the government loan were received by respondent and applied by it on the secured debt. The other three bales of cotton were sold on February 15, 1939, and the proceeds likewise applied by respondent on the secured debt. On March 6, 1939, a second

garnishment under the writ of attachment was served on respondent, and on June 20, 1939, another garnishment under a writ of execution was served on respondent.

Appellant contends that the evidence is insufficient to support the judgment, and makes an extended argument raising many questions most of which it is unnecessary to discuss. As we view the matter, the issues of fact and law in this case are exceedingly simple.

Appellant, as the creditor of the Agricultural Company, is of course in no better position in reference to the rights of the respondent than said Agricultural Company would be. It is clear that the respondent had a deed of trust upon said land and a mortgage upon the crops thereof, and that in accordance with said deed of trust and mortgage, it had a right to advance money for the care and harvesting of said crops to Sustarich as general manager of the Agricultural Company, or to anyone else, and it is also clear that it had a right to said crops and the proceeds thereof superior to appellant. It is appellant's contention that by signing the loan application for the 44 bales of cotton (which virtually amounted to a sale thereof) respondent released its lien on said cotton, but in the light of the evidence and the testimony of Sustarich it appears that this must be considered merely as a subordination agreement rather than a release of the mortgage lien of respondent, as respondent was merely cooperating in completing the necessary details to consummate the loan from the Commodity Credit Corporation.

It may be true, as appellant contends, that the Agricultural Company did not assume the personal indebtedness of its predecessors in interest, but the land and crops that it acquired were subject to such indebtedness, and the only moneys here involved are the proceeds of said crops.

Appellant has cited numerous well-established rules of law concerning the correctness of which there is no question. However, the difficulty with appellant's position is that the trial court, upon sufficient evidence, has found against the main contentions of appellant as to the facts. Although we may sympathize with the effort of a creditor who has furnished credit to a cotton grower to obtain his money notwithstanding a mortgage lien of the company which has financed the crop, which is still unpaid, there is no way under the law that the proceeds of the crop may be subject to attachment or execution

except in the manner provided by section 2969 of the Civil Code, namely, by tendering to the mortgagee the amount of the mortgage debt.

We must conclude, therefore, that the court below properly found that at the time the said garnishments were served and at the time the so-called assignment was given, respondent did not have in its possession or control any property, moneys or credits belonging to the Agricultural Company.

In view of the foregoing, it is unnecessary to discuss a number of other contentions made by appellant. We are convinced from a careful reading of the entire record that the judgment is amply supported by the evidence and that there is no error in the record.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing was denied April 23, 1942.